# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LAURIE M. ALLEN,

      Plaintiff,

v.

FIVE LAKES LAW GROUP, PLLC,

      Defendant.

CIVIL COMPLAINT

CASE NO. 2:26-cv-10775

DEMAND FOR JURY TRIAL

## <u>COMPLAINT</u>

Now comes LAURIE M. ALLEN ("Plaintiff") by and through the undersigned, complaining as to the conduct of FIVE LAKES LAW GROUP PLLC as follows:

### NATURE OF THE ACTION

1. Plaintiff bring this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.*, the Virginia Credit Services Businesses Act ("VCSBA") pursuant to Va. Code § 59.1-335.1 *et seq.,* the Virginia Debt Settlement Services Providers Act ("VDSSPA") pursuant to Va. Code. § 6.2-2026 *et seq.,* and the Virginia Consumer Protection Act ("VCPA") pursuant to Va. Code. § 59.1-196 *et seq.*, stemming from Defendant's unlawful conduct.

1

## JURISDICTION AND VENUE

2.  This action arises under and is brought pursuant to the CROA.  Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant resides within the Eastern District of Michigan and a substantial portion of the events or omissions giving rise to the instant claims occurred within the Eastern District of Michigan.

## PARTIES

4.  Plaintiff is a consumer over 18 years of age who at all times relevant to this matter resided in Gretna, Virginia.

5.  Defendant is a purported law firm, credit repair organization, and provider of debt management services representing to consumers that, through its services, they can work on negotiating consumers' debt for reduced balances so as to assist in making consumers debt free and improving consumers' credit. Defendant is a professional limited liability company organized under the laws of the state of Michigan with its principal place of business located at 26711 Northwestern Highway, Suite 350, Southfield, MI 48033.

6. Defendant acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

### FACTS SUPPORTING CAUSES OF ACTION

7. In approximately November of 2022, Plaintiff had a number of consumer obligations she wanted to address which were impacting her credit, and began looking into various credit repair and debt consolidation services.

8. Plaintiff subsequently happened upon Defendant after searching online.

9. Plaintiff spoke with a representative of Defendant's over the phone, who touted the beneficial impact of Defendant's services and how Plaintiff could enjoy improved credit as a result of Defendant's services.

10. It was represented to Plaintiff that she would enroll certain debts in Defendant's program, and then if she made a series of monthly payments to Defendant, her obligations would be negotiated and resolved for less than the balance owed.

11. Defendant further represented and suggested that their services would restore Plaintiff's credit and otherwise have a net improvement on Plaintiff's creditworthiness upon Plaintiff's completion of Defendant's program and as Plaintiff began paying down her debts.

12. At all relevant times, Defendant represented that an explicit and implicit purpose of their services was to improve Plaintiff's credit history and help reestablish her financial foothold.

13. Plaintiff was further informed that Defendant would begin reaching out to all of her creditors shortly after Plaintiff signed up and negotiate all of her enrolled obligations.

14. Plaintiff then indicated her desire to use Defendant's services, and subsequently entered into a contract with Defendant for its provision of services.

15. After agreeing to use Defendant's services, Plaintiff was instructed by Defendant to cease paying her creditors and instead divert those payments to Defendant for services.

16. Defendant failed to adequately and completely disclose this aspect of its services or otherwise accurately explain the true impact its advice would have on Plaintiff's finances.

17. Plaintiff began making her monthly payments in connection with Defendant's services, which totaled approximately $300.00 per month.

18. Plaintiff has persisted in making her payments to Defendant until the present.

19. Notwithstanding Plaintiff's maintenance of payments, Defendant has failed to perform its services in the manner represented.

20. Although Defendant represents that it can save consumers 50% on the balances, the total cost of Defendant's services fails to deliver these represented savings.

21. Defendant repeatedly and consistently failed to present settlement offers to Plaintiff that were in line with the represented savings, and presented some that would have resulted in Plaintiff's paying more than the balance of a debt after factoring in Defendant's fees.

22. Upon information and belief, Defendant is engaged in a pattern and practice of misrepresenting the savings consumers can experience through its services while simultaneously obfuscating the true costs of the services at issue.

23. Defendant further failed to clearly outline the nature of its fees and when it got paid, as it suggested that it only got paid once Plaintiff's debts had been paid down.

24. However, Plaintiff came to realize that Defendant charged its exorbitant fees after Plaintiff only made a single payment on a debt that Defendant resolved, resulting in Defendant taking a substantial portion of the funds in her dedicated account.

25. Plaintiff further realized that Defendant's suggestions that it would reach out to all of her creditors was false and misleading, as Defendant instead focused on one debt at a time at which point it pillaged Plaintiff's account for its fees.

26. Plaintiff was further informed that she had not enrolled a Home Depot credit card in Defendant's program, and as such it would not be addressed by Defendant – despite Plaintiff very clearly enrolling this debt in Defendant's program.

27. Rather than improve Plaintiff's credit as represented by Defendant, Defendant's services had the opposite effect, the nature of which Defendant largely obfuscated and misrepresented when signing Plaintiff up for services.

28. Upon information and belief, Defendant routinely engages third parties to provide its services in an overarching deceptive and misleading attempt to use its status as a law firm as merely a "face" to evade consumer protections applicable to the services at issue.

29. Defendant provides its name and purports to be providing the services in a further deceptive effort to convince consumers that they will have attorneys on their side who will be more qualified and able to provide services.

30. Defendant further, absent adequate disclosure or explanation, included various crammed services and hidden charges in its agreement with Plaintiff, including monthly charges totaling approximately $15 per month for Better Life Plans' ("BLP") "services" – which primarily revolved around discounted legal services that would be made available to Plaintiff.

31. However, Plaintiff was purportedly paying Defendant, a law firm, for such "legal" services, and the additional hidden and unnecessary charges were baked into

Defendant's services as a means to siphon consumers' monthly payments for useless and unperformed services ultimately retained by Defendant without having to provide any actual services to Plaintiff.

32. In total, Plaintiff has made thousands of dollars in payments in exchange for deficient and misrepresented services that have failed to fulfill their underlying purpose, ultimately causing Plaintiff substantial additional financial strain.

33. Frustrated and distressed by Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

34. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant for deficient services, as well as numerous violations of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations and debt management companies.

35. As a result of Defendant's conduct, on or around November of 2025 and pursuant to Defendant's contract, Plaintiff initiated arbitration against Defendant with JAMS. On February 25, 2026, JAMS stayed the matter as a result of Defendant's lack of participation.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

36. Plaintiff repeats and realleges paragraphs 1 through 35 as though fully set forth herein.

37. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

38. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as they are a person using any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

39. At all relevant times, Defendant represented to Plaintiff, both directly and by implication, that successfully completing Defendant's program would, ultimately, result in the overall improvement of Plaintiff's credit history as it would allow her to get caught up on obligations and reduce her overall debt load.

### a. Violations of CROA § 1679b(a)

40. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to

commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

41. Defendant violated the above provisions of the CROA through its deceptive and misleading representations regarding the nature of its services. Defendant represented that it would reach out to, and begin negotiations with, all of Plaintiff's enrolled creditors shortly after she signed up for services. However, Defendant subsequently failed to perform its services in the manner represented.

42. Defendant further violated the above provisions of the CROA through its deceptive and misleading conduct surrounding the fees it charges. Defendant largely misrepresents how and when it charges for services when inducing consumers to sign up, expecting consumers to be able to parse through dense contractual language in order to figure out the precise nature of Defendant's billing practices.

43. Defendant further violated the above provisions of the CROA through its deceptive representations regarding the savings consumers can experience. Defendant represents that consumers can pay about 50% of their enrolled debts, despite cutting against these representations in subsequent information it provides to consumers. Defendant's contract further blatantly misrepresented the savings available to Plaintiff. Upon information and belief, Defendant knowingly misrepresents the amount of savings consumers can experience and represents the

savings in a manner that does not consider the entirety of costs and fees associated with the services being provided.

44. Defendant further violated the CROA through their deceptive and fraudulent omission of the true nature of their services. Defendant failed to properly or clearly explain the extent to which Plaintiff would have to allow the enrolled obligations to go into default in order for Defendant's services to become effective prior to Plaintiff agreeing to use Defendant's services. Instead, Defendant represented that any negative impact of its services would be offset by the overall improvement brought about by Defendant's services – improvement which never materialized despite Plaintiff's years of payments.

45. Defendant further violated the above provisions of the CROA when it deceptively and misleadingly represented to Plaintiff that she did not enroll the Home Depot credit card in Defendant's program.

46. Defendant violated the above provisions of the CROA through their general course of conduct and business model designed to violate the consumer protection laws applicable to its business, yet subsequently escape liability for its unlawful conduct. Upon information and belief, Defendant is largely a face set forth by it and its third party service providers who actually provide the services, and Defendant engages in this conduct as part of an overarching fraudulent (and completely

misguided) effort to evade Virginia laws which address the type of business engaged in by Defendant and its third party vendors.

47. Defendant further violated the above provisions of the CROA through its conduct in misrepresenting the nature of the services to be provided to Plaintiff. Defendant completely and blatantly oversold the nature of its services, their benefits, and the ultimate impact its services would have on Plaintiff. Defendant engaged in these deceptive representations so as to paint a false and misleadingly positive picture of how its services work which completely omit and overlook the many negative aspects.

48. Additionally, Defendant violated the above provisions of the CROA through its deceptive conduct in suggesting that attorneys would be handling Plaintiff's accounts, when it was third parties contracted by or related to Defendant who actually provided any services absent any meaningful or significant attorney involvement

49. Defendant further violated the above provisions of the CROA through its conduct in representing its services one way when inducing consumers to sign up, only to cut against those representations through contractual language. Defendant seeks to benefit from certain representations when speaking with consumers over the phone, knowing that consumers are more likely to rely on those representations than the dense contractual language Defendant provided Plaintiff. That Defendant's

contract seeks to remove its non-contractual representations from the course of the parties' dealings further illustrates the generally duplicitous nature of Defendant's conduct and its efforts to attempt to justify its blatantly deceptive and misleading conduct.

50. Defendant further violated the above provisions of the CROA through its deceptive cramming of useless, illusory, and unperformed services into its own services absent adequate or accurate disclosure. The duplicative nature of such services compared to the "legal" services Defendant was purportedly providing to Plaintiff further underscores the generally deceptive nature of Defendant's conduct.

### b.  Violation of CROA § 1679b(b)

51. The CROA, pursuant to 15 U.S.C. § 1679b(b), states that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

52. Defendant violated § 1679b(b) as they charged and received money from Plaintiff in exchange for the performance of services before such services were fully performed. Upon information and belief, throughout the life of Defendant's dealings with Plaintiff, it routinely took fees for services before such services were fully performed.

### c.  Violations of CROA § 1679c

53. The CROA, pursuant to 15 U.S.C. § 1679c, outlines certain disclosures that must be provided to consumers prior to contracting with consumers.

54. Defendant violated § 1679c through its complete failure to provide Plaintiff the disclosures required by the CROA.

### d. Violations of CROA § 1679d

55. The CROA, pursuant to 15 U.S.C. § 1679d, outlines various requirements for the contracts between credit repair organizations and consumers, including "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679d(b)(4).

56. Defendant violated § 1692d of the CROA through their failure to enter into a contract with Plaintiff that complies with the requirements of the CROA.

### e. Violation of CROA § 1679f(b)

57. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

58. Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff' waiver of the protections afforded under the CROA through the contract between the parties. Defendant's contract contains a number of clauses and disclaimers that seek to insulate itself from liability for its conduct in violation of the CROA, including efforts to get around the applicability of CROA as well as through including a merger and integration clause which seeks to limit the party's agreement to the contract, which is inconsistent with how the services were represented.

WHEREFORE, Plaintiff, LAURIE M. ALLEN, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Honorable Court deems just and appropriate.

## COUNT II – VIOLATIONS OF THE VIRGINIA CREDIT SERVICES BUSINESSES ACT

59. Plaintiff restates and realleges paragraphs 1 through 55 as though fully set forth herein.

60. Plaintiff is a "consumer" as defined by Va. Code § 59.1-335.2.

14

61. Defendant is a "credit services business" as defined by Va. Code § 59.1-335.2.

62. The carve out for attorneys does not apply to Defendant because the services at issue were not within the course and scope of its practice as a lawyer, given that all of the services provided to Plaintiff were non-legal in nature and were otherwise provided by non-attorneys absent meaningful or actual oversight by any Virginia-licensed attorney.

### a. Violation of Va. Code § 59.1-335.5

63. The VCSBA, pursuant to Va. Code § 59.1-335.5, outlines a list of prohibited conduct on the part of credit services businesses.

64. The VCSBA, pursuant to Va. Code. § 59.1-335.5-1, prohibits a CSB from charging or receiving money for services prior to the complete performance of those services.

65. Defendant violated the above provision of the VCSBA in much the same way it violated § 1679b(b) of the CROA.

66. The VCSBA, pursuant to Va. Code § 59.1-335.5-4, provides that CSBs cannot "[m]ake or use any untrue or misleading representations in the offer or sale of the services of a credit services business or engage, directly or indirectly, in any act, practice, or course of business which operates or would operate as a fraud or deception upon any person in connection with the offer or sale of the services of a credit services business."

15

67. Defendant violated the above provision of the VCSBA in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

### b. Violations of Va. Code §§ 59.1-335.6 & 335.7

68. The VCSBA, pursuant to Va. Code §§ 59.1-335.6 and 335.7, outline the informational statement that must be provided to consumers prior to providing services or accepting payments from consumers.

69. Defendant violated the above provision of the VCSBA by failing to provide Plaintiff the requisite informational statement in the manner required by Virginia law.

### c. Violation of Va. Code § 59.1-335.8

70. The VCSBA, pursuant to Va. Code § 59.1-335.8, outlines the requirements for contracts between CSBs and consumers.

71. Defendant violated the above provisions of the VCSBA by failing to have the full extent of requisite information included in its contract with consumers and Plaintiff.

### d. Violation of Va. Code § 59.1-335.9

72. The VCSBA, pursuant to Va. Code § 59.1-335.9(C), provides that "any attempt by a credit services business to have a consumer waive rights given by this chapter shall constitute a violation of this chapter."

16

73. Defendant violated the above provision of the VCSBA in much the same way it violated § 1679f(b) of the CROA.

WHEREFORE, Plaintiff, LAURIE M. ALLEN, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Va. Code. § 59.1-335.10;

c. Awarding Plaintiff punitive damages pursuant to Va. Code § 59.1-335.10;

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Va. Code §§ 59.1-335.12(A) & 59.1-204(B); and,

e. Awarding any other relief as the Honorable Court deems just and appropriate.

## COUNT III – VIOLATIONS OF THE VIRGINIA DEBT SETTLEMENT SERVICES PROVIDERS ACT

74. Plaintiff restates and realleges paragraphs 1 through 70 as though fully set forth herein.

75. Plaintiff is a "consumer" as defined by Va. Code § 6.2-2026.

76. Defendant is a provider of "debt settlement services" as defined by Va. Code § 6.2-2026.

77. Defendant is not exempt from the VDSSPA as it is not a person licensed to practice law in the commonwealth of Virginia. Furthermore, and upon information and belief, any Virginia-licensed attorney associated with Plaintiff's account is not

17

employed by Defendant, and any such attorney did not have any meaningful involvement in or oversight over the actual services provided to Plaintiff.

### a. Violation of Va. Code § 6.2-2040

78. The VDSSPA, pursuant to Va. Code. § 6.2-2040.6, prohibits entities from requiring consumers to open a dedicated account as a condition of receiving debt settlement services, and similarly prohibits entities from receiving compensation for referring consumers to providers of dedicated accounts.

79. Defendant violated the above provisions of the VDSSPA through its requirement that Plaintiff open an account with Defendant's specified entity, and further through its receipt of compensation for the referral of consumers to Defendant's preferred providers of dedicated accounts.

### b. Violations of Va. Code § 6.2-2041

80. The VCSBA, pursuant to Va. Code § 6.2-2041, outlines the fees a provider may charge, limiting such charges to either 20% of the principal amount of debts, or 30% of the savings a provider delivers when settling debts.

81. Defendant violated the above provisions of the VCSBA through its charging settlement fees greater than 20% of the balance of enrolled debts. This is the primary provision which Defendant seeks to avoid through its deceptive efforts to evade Virginia law so as to deplorably pad it and its affiliates' pockets with unlawfully excessive fees.

### c. Violations of Va. Code § 6.2-2042

82. The VCSBA, pursuant to Va. Code § 6.2-2042, prohibits deceptive advertising on the part of entities providing debt settlement services.

83. Defendant violated the above provision of the VDSSPA through the deceptive and misleading representations Defendant made regarding the services it was offering and would perform for Plaintiff.

WHEREFORE, Plaintiff, LAURIE M. ALLEN, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Va. Code. § 6.2-2048;

c. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Va. Code §§ 6.2-2048 & 59.1-204(B); and,

d. Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT IV – VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT

84. Plaintiff restates and realleges paragraphs 1 through 80 as though fully set forth herein.

85. Defendant is a "supplier" as defined by Va. Code § 59.1-198.

86. The transaction(s) between Plaintiff and Defendant constitute "consumer transaction[s]" as defined by Va. Code § 59.1-198.

19

87. The VCPA prohibits suppliers from engaging in a series of enumerated conduct, including "misrepresenting that goods or services have certain . . . characteristics . . . uses, or benefits," "misrepresenting that goods or services are of a particular standard, quality, grade, style, or model," and, *inter alia,* "advertising goods or services with intent not to sell them as advertised."

88. Furthermore, violations of both the VCSBA and VDSSPA constitute violations of the VCPA. *See* Va. Code §§ 59.1-335.12(A) & 6.2-2050.

89. Defendant violated the VCPA by engaging in conduct explicitly prohibited by the VCPA, as outlined above, and further through its separate violations of both the VCSBA and VDSSPA.

WHEREFORE, Plaintiff, LAURIE M. ALLEN, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Va. Code. § 59.1-204;

c. Treble actual damages pursuant to Va. Code § 59.1-204;

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Va. Code § 59.1-204; and,

e. Awarding any other relief as the Honorable Court deems just and appropriate.

Dated: March 9, 2026                                    Respectfully submitted,

s/ Ahmad T. Sulaiman
Ahmad T. Sulaiman, Michigan Bar No. P82149
Counsel for Plaintiff
Admitted in the State Bar of Michigan
Admitted in the Eastern District of Michigan
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 575-8181 x124 (phone)
(630) 575-8188 (fax)
ahmad.sulaiman@sulaimanlaw.com

s/ Nathan C. Volheim
Nathan C. Volheim, Esq. #6302103
Counsel for Plaintiff
Admitted in the Eastern District of Michigan
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 575-8181 x113 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com